Filed 3/12/25  Stroj v. Brill CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT J. STROJ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>MARTIN BRILL et al.,<br><br>    Defendants and Respondents. | G063834<br><br>(Super. Ct. No. 30-2023-01342585)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed.

Robert J. Stroj, in pro. per., for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing and Amy P. Chambers for Defendant and Respondent Martin Brill.

Michel Miller Park, Allen L. Michel and Won M. Park for Defendant and Respondent Levene, Neale, Bender, Yoo & Golubchik L.L.P.

Plaintiff and appellant Robert J. Stroj appeals from an order granting special motions to strike under Code of Civil Procedure section 425.16 (all undesignated statutory references are to this code). Known as the anti-SLAPP statute, section 425.16 was enacted to address "'a disturbing increase' in strategic lawsuits against public participation (SLAPPs): 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242 (*Geiser*).) Stroj argues section 425.16 cannot apply in the instant case because the communications by defendants and respondents Martin Brill, a lawyer, and the law firm Levene, Neale, Bender, Yoo & Golubchik, L.L.P. (Levene) fell within the illegality exception under *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*). In the alternative, Stroj contends Brill and Levene did not engage in protected activity under section 425.16, and Stroj can show a probability of prevailing on the merits on his causes of action for extortion, intentional infliction of emotional distress, and intentional interference with prospective economic advantage.

We affirm. We conclude the trial court properly found Brill and Levene engaged in protected activity under section 425.16, subdivision (e)(2), and the litigation privilege under Civil Code section 47 barred Stroj's claims.

FACTUAL AND PROCEDURAL BACKGROUND

I.

COMPLAINT

Stroj is a lawyer, although he is suspended from the practice of law in California. In August 2023, he filed a complaint against Brill, Levene, and Does 1 through 10. Stroj alleged the following facts in his complaint.

Stroj invested $180,000 in a business called American Patriot Brands (APB) in late 2019 and early 2020. In March 2023, he learned the

2

United States Securities and Exchange Commission (SEC) filed charges against APB, alleging APB of defrauding investors between 2016 and 2023. That prompted Stroj to conduct a "due diligence investigation." Stroj discovered members of APB made false statements to him regarding APB's assets, financial condition, scope of operations, and the value of its cannabis farm.

Thereafter, Stroj discovered Brill, a partner at Levene, was APB's corporate counsel between 2016 and 2022. At all relevant times, Brill and Levene were "agents of each other." Therefore, they were: "liable for the acts of the other through said agency, respondeat superior and vicariously liable for the acts of the other." Stroj learned Brill knew APB was misrepresenting investors and potential investors regarding APB's financial condition. Stroj believed, because Brill was aware of these misrepresentations, Brill and Levene breached their fiduciary duties owed to Stroj. Stroj also discovered Brill, together with APB's chief executive officer Robert Lee, established a business called Southern California Injured Workers (SCIW), and that SCIW was under a criminal investigation by the Orange County District Attorney.

Stroj drafted a complaint against APB, Brill, Levene, and others. In May 2023, he e-mailed the complaint to them along with a settlement demand of $240,000. A few hours later, Brill, using his Levene e-mail address, replied to Stroj:

"I have read the complaint and I am shocked and dismayed at your total disregard of the truth concerning the allegations you make against me and my firm. It is obvious that you have failed to do any investigation or due diligence before drafting the complaint. Your allegations are spurious and libelous and I will hold you accountable if you continue to name me in the complaint. Specifically, neither I nor my firm was ever corporate counsel

3

for APB. We were its insolvency counsel and were specifically engaged to work with creditors as issues arose. I was never involved in, nor did I ever see any of the investor decks which you claim are false and which you claim I (and my firm) had reason to believe were false. That was never part of my firm's engagement. Upon what evidence do you base your claims? I was never part of the fundraising of which you complain. I didn't even know that you (or others) had invested in APB until after you started working for APB and made a claim for your unpaid fees. Also, your claim about me and Robbie using APB funds to fund SCIW is . . . completely unfounded and without merit. I funded SCIW with my own funds and not a penny from APB. I can provide you with proof of every advance I made. Robbie never contributed any funds. It is reprehensible that you would make such allegations without any due diligence or investigation. Furthermore, I was merely a lender to SCIW and never was involved in any of its operations.

"If you don't immediately remove me from the complaint, I will report you to the State Bar for your unauthorized practice of law, your threatened extortion and misuse of the judicial system. I'm sure the State Bar will be happy to investigate given your history. Also, you can expect me to sue you for the return of the over $100,000 that I paid you for your 'consulting services' relating to PI marketing. Notwithstanding the payments, not one referral was made. I see this as a scam and a fraud which you[] perpetrated on me to fraudulently induce me to pay you for services that were never performed.

"Govern yourself accordingly." (Italics, underscoring, and boldface omitted.)

This e-mail "put [Stroj] in extreme fear" for several reasons. First, Brill "threatened to accuse [Stroj] of two separate crimes . . . [:] the

4

unauthorized practice of law and extortion." Second, Brill "threatened to accuse [Stroj] of misuse of the judicial system which, while not a crime in itself, was an allegation of wrongdoing that would impute disgrace, humiliation and embarrassment on" Stroj. Third, Brill knew Stroj was suspended from the practice of law and was petitioning the State Bar of California for reinstatement. Fourth, "Brill is a well[-]respected member of the State Bar" whose complaint to the State Bar would likely be credible. Fifth, Brill implied he had information, which he planned to send to the State Bar, showing alleged criminal activity by Stroj, and his e-mail demonstrated "Brill intended to fabricate information to the State Bar relating to [Stroj's] marketing services to show an alleged unauthorized practice of law."

Stroj filed his complaint in Orange County Superior Court. He later filed a first amended complaint.[1] In June 2023, he e-mailed a copy of the first amended complaint to Brill, Levene, and other defendants and offered to resolve the case for $300,000. One hour after Stroj sent that e-mail, Brill, using his Levene e-mail address again, e-mailed APB representative David

---

[1] We will refer to this litigation as the *APB* case. In the first amended complaint in the *APB* case, Stroj alleged causes of action for fraud, negligent misrepresentation, breach of fiduciary duty, professional negligence, aiding and abetting, civil conspiracy, and violations of the Corporations Code sections 25400 and 25401. He alleged APB, Brill, Levene, and other defendants engaged in a fraudulent scheme to induce Stroj to invest in APB. Stoj alleged, among other things, Brill and Levene breached fiduciary duties to him and other shareholders. Stroj alleged Brill and Lee "secretly engaged in a business venture whereby they created a company named [SCIW] for which SCIW was to provide managed medical services to doctors and their patients." Stroj alleged, "[I]n order to hide their secret business venture, [Levene] agreed that Defendant Lee would be the sole owner of the business with no duties while [Levene] would handle all the day to day operations, Defendant Brill would fund the business[,] and Defendant Brill/Defendant Lee would share the profits from the business."

Fish, stating: "I see you got yourself out of the lawsuit. If you want my cooperation you better get me out of the suit. New allegations concerning free rent must have come from you. I thought you were going to help me get out. Tell [Stroj] my first business this morning is to file my complaint with the [S]tate [B]ar and I expect you to back me up on it." (Italics, underscoring, and boldface omitted.)

This e-mail also "placed [Stroj] in extreme fear" for additional reasons as well as those stated above. First, Brill was threatening Fish: if Fish did not assist Brill with a State Bar complaint alleging Stroj "commit[ed] the crime of unauthorized practice of law," Brill would not work with Fish "on other matters." If Fish relented, Stroj "would be faced with two separate fabricated [S]tate [B]ar complaints." Second, Brill was seeking to use "other people in presenting an untrue and false narrative to the [S]tate [B]ar." Third, because Brill was admitting wrongdoing in his June 2023 e-mail, Stroj recognized "Brill would do just about anything, including extorting others, in order to accomplish his goal of getting removed from" the first amended complaint in the *APB* case.

Following the June 2023 e-mail, Brill called Fish several times, requesting information showing Stroj engaged in the unauthorized practice of law. After learning about the telephone conversations between Brill and Fish, Stroj "experienced an extremely high degree of fear that . . . Brill was preparing to file a false and fabricated [S]tate [B]ar complaint against" Stroj. As a result, Stroj suffered from "great anxiety, depression, worry, concern, apprehension and paralysis to the point where [Stroj] was no longer able to sleep." Because of this emotional distress, Stroj informed the State Bar he was withdrawing his petition for reinstatement.

6

Based on these factual allegations, Stroj alleged three causes of action against Brill, Levene, and Does 1 through 10: (1) civil extortion; (2) intentional infliction of emotional distress; and (3) intentional interference with prospective economic advantage.

## II.

### ANTI-SLAPP MOTIONS

In September 2023, Levene moved to strike the three causes of action in the complaint against it under section 425.16. It argued Brill engaged in protected activity under section 425.16, subdivision (e)(2), which covers "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." It contended the complaint was based on Brill's May 2023 e-mail to Stroj and June 2023 e-mail to Fish, and these communications fell within the ambit of section 425.16, subdivision (e)(2). Levene asserted the *Flatley* exception did not apply. It argued Stroj would be unable to show a probability of prevailing on the merits because the litigation privilege applied.

In support of its motion, Levene provided a declaration of one of its attorneys, Beth Ann R. Young. She averred Brill was a partner at Levene until his retirement on December 31, 2021. She asserted, after his retirement, Brill lacked the authority to act for Levene, and he billed a minimal number of hours in 2022 and 2023. She declared she was unaware Stroj existed until June 2023, when Stroj e-mailed the first amended complaint in the *APB* case to the partners at Levene.

In October 2023, Brill also moved to strike the three causes of action in the complaint under section 425.16, presenting similar arguments as Levene. In support of his motion, Brill filed declarations by APB's chief operating officer, Lee, and Brill. Of relevance here, Brill stated in his

7

declaration: "At the time I sent the May 11, 2023 e[-]mail, I knew [Stroj]'s license to practice law had been suspended. However, I suspected that [Stroj] had been providing to SCIW legal services requiring a valid law license. Based on my review of the complaint in this case, I understand that [Stroj] believes my reference to a State Bar complaint in the May 11, 2023 e[-]mail referred to marketing services that he provided for me. [Stroj] is wrong. That is not what I was referring to. Rather, it was my understanding that Mr. Fish, SCIW's consultant, on behalf of SCIW had engaged [Stroj] to prepare and edit legal documents, and conduct legal research and analysis, for SCIW. I believed that if [Stroj] filed the complaint against me, I would have no choice but to report this conduct to the State Bar as it was relevant to the wide-ranging claims in the draft complaint, and would certainly come up in the course of that litigation."

Stroj opposed both anti-SLAPP motions, notably arguing the *Flatley* exception applied. In support of his oppositions, he provided his and Fish's declarations. Levene and Brill replied.

The trial court granted the anti-SLAPP motions. It concluded: Brill's communications were related to the litigation in the *APB* case and thus protected, the *Flatley* exception was inapplicable, and the litigation privilege barred Stroj's claims. Stroj timely appealed.

DISCUSSION

I.

ANTI-SLAPP LEGAL FRAMEWORK AND STANDARD OF REVIEW

The anti-SLAPP statute aims to shield defendants from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To curb such abuses of the civil justice system, "the statute authorizes a

8

special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1)." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The statute must "be construed broadly." (§ 425.16, subd. (a).)

Courts evaluate anti-SLAPP motions through a two-step process. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) First, "the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*), quoting § 425.16, subd. (b)(1); see § 425.16, subd. (e) [defining protected activity].) Second, if the defendant satisfies the first step, the plaintiff must show "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The plaintiff must establish the claim has "at least 'minimal merit.'" (*Park*, *supra*, 2 Cal.5th at p. 1061.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park*, *supra*, 2 Cal.5th at p. 1067.) ""'Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim.""" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

9

## II.

### STEP ONE: PROTECTED ACTIVITY

*A. Brill and Levene's E-mails and Telephone Calls Were Protected Activity*

At step one, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) To carry its burden at step one, the moving defendant must establish "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 (*Rand Resources*).) The four categories of protected activity "describe conduct "'in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'"" (*Ibid.*, quoting § 425.16, subd. (e).) Only one category is relevant here, section 425.16, subdivision (e)(2). Section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body."

"'[C]ourts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16."'" (*Trilogy Plumbing, Inc. v. Navigators Specialty Ins. Co.* (2020) 50 Cal.App.5th 920, 931.) "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 (*Neville*).) At the first step of the anti-SLAPP inquiry, "courts 'look[] to the litigation privilege [(Civ. Code, § 47)] as an aid in construing the scope of section 425.16,

10

subdivision [(e)(2)] with respect to the first step of the two-step anti-SLAPP inquiry.'" (*Neville, supra*, 160 Cal.App.4th at p. 1263, second bracketed insertion added.) Courts have equated the "in connection with" standard of section 425.16, subdivision (e)(2) with the reasonable relevancy standard of Civil Code section 47. (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1097 (*Bassi*).) "Put differently, the statement must '"be connected with, or have some logical relation to, the action, i.e., . . . not be extraneous to the action."'" (*Id.* at p. 1097.) "'Both section 425.16 and Civil Code section 47 are construed broadly, to protect the right of litigants to '"the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions."'"' (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055.)

"There is no question that communications sent in anticipation of litigation or as part of ongoing litigation constitute legitimate speech or petitioning activity protected under the anti-SLAPP statute." (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1023 (*Geragos*).) "Settlement negotiations while a suit is pending are . . . protected" under section 425.16, subdivision (e)(2). (*Bonni, supra*, 11 Cal.5th at p. 1024.)

"We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.) "By requiring that a moving defendant demonstrate that the targeted cause of action is one arising from protected speech or petitioning (§ 425.16, subd. (b)), our anti-SLAPP statute utilizes a reasonable, objective test that lends itself to adjudication on pretrial motion." (*Equilon Enterprises v. Consumer Cause,*

11

*Inc.* (2002) 29 Cal.4th 53, 65; accord *Geiser, supra,* 13 Cal.5th at pp. 1254–1255 ["the touchstone is objective reasonableness"].)

We begin by considering what conduct forms the basis for Stroj's claims. All three causes of action are based on the following communications by Brill (who allegedly acted on behalf of Levene): (1) Brill's May 2023 e-mail to Stroj; (2) Brill's June 2023 e-mail to Fish; and (3) Brill's subsequent telephone conversations with Fish.[2] We therefore turn our attention to whether these communications were protected activity under section 425.16, subdivision (e)(2).

As the trial court correctly concluded, the communications were related to ongoing litigation or settlement negotiations in the *APB* case. First, in May 2023, Brill sent an e-mail to Stroj in response to Stroj's prelitigation demand. Brill denied the allegations in Stroj's complaint in the *APB* case, characterizing them as "spurious and libelous." Brill also demanded Stroj remove Brill from the lawsuit: "If you don't immediately remove me from the complaint, I will report you to the State Bar for your unauthorized practice of law, your threatened extortion and misuse of the judicial system." (Italics, underscoring, and boldface omitted.)

Second, in June 2023, Brill e-mailed Fish about the *APB* case, after receiving Stroj's e-mail regarding the first amended complaint in the *APB* case and a settlement offer. Brill wrote, "If you want my cooperation you better get me out of the suit." Brill, referring to his prior demand, instructed Fish: "Tell [Stroj] my first business this morning is to file my complaint with

---

[2] As Stroj alleged Brill and Levene were agents of each other, Brill's protected communications were also Levene's protected communications for purposes of the step-one analysis.

12

the [S]tate [B]ar and I expect you to back me up on it." (Italics, underscoring, and boldface omitted.)

Third, Brill's telephone calls to Fish related to the *APB* case. As the trial court properly found: "Brill's communications regarding Stroj's alleged unauthorized practice of law, i.e., allegedly providing legal services to SCIW, were reasonably connected to Stroj's breach of fiduciary claims against Brill and [Levene] in the *APB* case. Stroj alleges in the *APB* case, *inter alia*, that Brill and [Levene] breached fiduciary duties to him and other shareholders by 'secretly engaging in a business venture wherein they created a company named [SCIW] for which SCIW was to provide managed medical services to doctors and their patients,' and that 'in order to hide their secret business venture, [Levene] agreed that Defendant Lee would be the sole owner of the business with no duties while [Levene] would handle all the day to day operations, Defendant Brill would fund the business[,] and Defendant Brill/Defendant Lee would share the profits from the business.' [Citations.] Stroj also alleges in the *APB* case that Brill and [Levene] wrongly 'employed APB's accountant to handle SCIW financials thereby leading to commingling certain related ABP funds/obligations with SCIW funds/obligations'; used APB Newport Beach office space to perform SCIW business; sold 'several hundreds of thousands' of Brill's APB shares to SCIW for inflated amounts and did not report the sales to the SEC; assisted APB executives in selling 'several hundreds of thousands' of APB shares to SCIW for inflated amounts and did not report the sales to the SEC; and used APB funds to pay for defense attorneys related to an alleged Orange County District Attorney investigation of SCIW. [Citations.] As evidenced by these allegations, the *APB* case clearly involves SCIW and the parties' respective

13

conduct with respect to SCIW. Brill's communications thus had a reasonable connection to the underlying dispute."

*B. The* Flatley *Exception Does Not Apply*

Stroj resists our conclusion. He argues section 425.16's protection does not cover Brill's communications because Brill committed the crime of extortion.

"[N]ot all speech or petition activity is protected by section 425.16." (*Flatley*, *supra*, 39 Cal.4th at p. 313.) Protection under section 425.16 "does not extend to communication or conduct that is, as a matter of law, illegal." (*Geragos*, *supra*, 88 Cal.App.5th at p. 1023.) This illegality exception under *Flatley* is narrow. (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 378.) When "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley*, *supra*, 39 Cal.4th at p. 320.)

"Extortion is the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear." (Pen. Code, § 518, subd. (a).) Fear, for purposes of extortion, "may be induced by a threat of any of the following: [¶] 1. To do an unlawful injury to the person or property of the individual threatened or of a third person. [¶] 2. To accuse the individual threatened, or a relative of his or her, or a member of his or family, of a crime. [¶] 3. To expose, or to impute to him, her, or them a deformity, disgrace, or crime. [¶] 4. To expose a secret affecting him, her, or them. [¶] 5. To report his, her, or their immigration status or suspected immigration status." (Pen. Code, § 519.) "Every person who, with intent to extort property or other consideration from another, sends or delivers to any

14

person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in [Penal Code] [s]ection 519 is punishable in the same manner as if such property or other consideration were actually obtained by means of such threat." (Pen. Code, § 523, subd. (a); see *Flatley*, *supra*, 39 Cal.4th at p. 326.)

"Extortion has been characterized as a paradoxical crime in that it criminalizes the making of threats that, in and of themselves, may not be illegal. '[I]n many blackmail cases the threat is to do something in itself perfectly legal, but that threat nevertheless becomes illegal when coupled with a demand for money.'" (*Flatley*, *supra*, 39 Cal.4th at p. 326.) "Moreover, threats to do the acts that constitute extortion under Penal Code section 519 are extortionate whether or not the victim committed the crime or indiscretion upon which the threat is based and whether or not the person making the threat could have reported the victim to the authorities or arrested the victim." (*Id.* at p. 327.) "Attorneys are not exempt from these principles in their professional conduct." (*Ibid.*)

In *Flatley*, a famous performer, Michael Flatley, sued an attorney for civil extortion, intentional infliction of emotional distress, and wrongful interference with economic advantage. (*Flatley*, *supra*, 39 Cal.4th at p. 305.) The lawsuit was based on a demand letter by the attorney, whose client alleged Flatley raped her, and on subsequent telephone conversations in which the attorney demanded a seven-figure payment to resolve the lawsuit. (*Ibid.*) The attorney moved to strike Flatley's complaint under section 425.16, arguing the "letter was a prelitigation settlement offer and therefore Flatley's complaint arose from [the attorney's] exercise of his constitutionally protected right of petition." (*Ibid.*)

15

The California Supreme Court analyzed the demand letter: "At the core of [the attorney's] letter are threats to publicly accuse Flatley of rape and to report and publicly accuse him of other unspecified violations of various laws unless he 'settled' by paying a sum of money to [the attorney's client] of which [the attorney] would receive 40 percent." (*Flatley*, *supra*, 39 Cal.4th at p. 329.) "The key passage in [the attorney's] letter is . . . where Flatley is warned that, unless he settles, 'an in-depth investigation' will be conducted into his personal assets to determine punitive damages and this information will then '**BECOME A MATTER OF PUBLIC RECORD, AS IT MUST BE FILED WITH THE COURT . . . . [¶] Any and all information, including Immigration, Social Security Issuances and Use, and IRS and various State Tax Levies and information will be exposed.** We are positive the media worldwide will enjoy what they find.'" (*Ibid.*) The last paragraph of the letter "warns Flatley that, along with the filing of suit, press releases will be disseminated to numerous media sources and placed on the Internet." (*Ibid.*)

Our Supreme Court held: "[T]he letter and subsequent phone calls constitute criminal extortion as a matter of law. These communications threatened to 'accuse' Flatley of, or 'impute to him,' 'crime[s]' and 'disgrace' (Pen. Code, § 519, subds. 2, 3) unless Flatley paid [the attorney] a minimum of $1 million of which [the attorney] was to receive 40 percent." (*Flatley*, *supra*, 39 Cal.4th at p. 330.) The evidence was uncontroverted, as the attorney did not deny sending the letter or challenge Flatley's account of the telephone calls. (*Id.* at pp. 328–329.) "Moreover, the threat to disclose criminal activity *entirely unrelated* to any alleged injury suffered by [the attorney's] client 'exceeded the limits of respondent's representation of his client' and is itself evidence of extortion." (*Id.* at pp. 330–331, italics added.)

16

The Supreme Court stressed: "[O]ur conclusion that [the attorney's] communications constituted criminal extortion as a matter of law are based on the specific and extreme circumstances of this case." (*Flatley*, *supra*, 39 Cal.4th at p. 332, fn. 16.) It cautioned "our opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion." (*Ibid.*)

In *Geragos*, a case involving an alleged threat to file a State Bar claim, the Second District Court of Appeal held the *Flatley* exception did not apply. A client sued his former attorneys, alleging they accepted fees from him without performing the promised legal services. (*Geragos*, *supra*, 88 Cal.App.5th at p. 1011.) In telephone calls and e-mails with the client's former attorneys, the client's attorney discussed the possibility of filing a State Bar claim regarding the fee issue. (*Ibid.*) The former attorneys filed a cross-complaint against the client and his new attorney, asserting several causes of action, including extortion. (*Ibid.*) The client and his new attorney moved to strike the cross-complaint. (*Ibid.*)

The appellate court held the new attorneys' communications did not fall within the *Flatley* exception. (*Geragos*, *supra*, 88 Cal.App.5th at p. 1028.) It did not "find a threat to file a State Bar claim *coupled with a demand for money*" in the e-mails, and determined the evidence pertaining to the telephone calls was controverted. (*Id.* at pp. 1025, 1027.) It concluded: "Misappropriation of client funds is the gravamen of the civil action against the [former attorneys]. If a threat to report such conduct to the State Bar was made, it had a reasonable connection to the underlying dispute and therefore

17

is not comparable to the 'extreme' conduct found unprotected by *Flatley*." (*Id.* at p. 1028.)

Here, the trial court properly reasoned and concluded the *Flatley* exception did not apply. As in *Geragos*, Brill did not make a demand for money in his communications. Brill threatened to file a State Bar claim coupled with a demand to remove him from the complaint in the *APB* case. Even if Stroj's causes of action against Brill and Levene in the *APB* case could be "property or other consideration" within the meaning of Penal Code section 518, subdivision (a) (see *People v. Baker* (1978) 88 Cal.App.3d 115, 119; *People v. Cadman* (1881) 57 Cal. 562, 564), Brill's communications were "reasonably related to the underlying APB dispute," as discussed above.[3]

Contrary to Stroj's assertions, the present case is distinguishable from *Flatley*, *Falcon Brands, Inc. v. Mousavi & Lee, LLP* (2022) 74 Cal.App.5th 506 (*Falcon Brands*), and *Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405 (*Stenehjem*). As discussed, *ante*, the court in *Flatley* found "the threat to disclose criminal activity entirely unrelated to any alleged injury suffered by [the attorney's] client 'exceeded the limits of respondent's representation of his client' and is itself evidence of extortion." (*Flatley*,

---

[3] Although Brill's communications do not amount to extortion as a matter of law, we deplore the lack of professional civility in his communications. "[C]ivility is a professional requirement of the practice of law, not a mere matter of good manners." (*Young v. Hartford* (2024) 106 Cal.App.5th 730, 742.) "Incivility slows things down, it costs people money— money they were counting on their lawyers to help them save. And it contravenes the Legislature's directive that 'all parties shall cooperate in bringing the action to trial.' (Code Civ. Proc., § 583.130.)" (*Masimo Corp. v. The Vanderpool Law Firm, Inc.* (2024) 101 Cal.App.5th 902, 911.) Accordingly, we urge the parties, who are lawyers, to practice civility in their communications going forward.

*supra*, 39 Cal.4th at pp. 330–331.) The additional cases cited by Stroj that apply the *Flatley* exception similarly find the threat was entirely unrelated to any injuries alleged in the claims. In *Falcon Brands*, the court concluded an attorney's "threat to disclose criminal activity entirely unrelated to her client's damage claim '"exceeded the limits of respondent's representation of his client."'" (*Falcon Brands*, *supra*, 74 Cal.App.5th at p. 522.) And *Stenehjem* held "the alleged criminal activity that Stenehjem threatened to expose in a qui tam action was 'entirely unrelated to any alleged injury suffered by' Stenehjem as alleged in his defamation and wrongful termination claims." (*Stenehjem*, *supra*, 226 Cal.App.4th at p. 1423.)

Stroj contends the trial court misapplied case law by focusing on the relatedness of the threat to the *APB* case. But *Flatley*, *Falcon Brands*, and *Stenehjem* rested their holdings on relatedness. So have other cases involving the *Flatley* exception—whether or not they apply it. (See, e.g., *Flickinger v. Finwall* (2022) 85 Cal.App.5th 822, 838 (*Flickinger*) [*Flatley* exception did not apply because the court "view[ed] defendant's implied threat to make public allegations that plaintiff was involved in illegal kickback schemes and money laundering as reasonably connected to the parties' dispute"].) Thus, this argument is unconvincing.

Stroj suggests Brill provided a post hoc justification for threatening to file a State Bar claim. Stroj questions Brill's asserted rationale that the State Bar claim concerned Stroj's purported unauthorized practice of law for SCIW and was therefore related to the *APB* case. Instead, Stroj implies we should give greater weight to Stroj's and Fish's declarations, in which they averred Fish never engaged Stroj to perform legal work for SCIW. But Stroj's "subjective and self-serving interpretation cannot establish extortion as a matter of law." (*Flickinger*, *supra*, 85 Cal.App.5th at p. 837.)

19

## III.

### STEP TWO: PROBABILITY OF PREVAILING ON THE MERITS

"If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral*, *supra*, 1 Cal.5th at p. 396.)

"A plaintiff cannot show a probability of prevailing on the merits for anti-SLAPP purposes where the claim is barred by the litigation privilege codified in Civil Code section 47." (*Bassi*, *supra*, 101 Cal.App.5th at p. 1102.) Under Civil Code section 47, subdivision (b), "'[t]he litigation privilege . . . provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. This privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness." [Citation.] "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."'" (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 661–662.)

"The litigation privilege is a statutory protection that has been interpreted expansively. . . . Its purpose is to 'afford litigants and witnesses free access to the courts without fear of being harassed subsequently by

20

derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.' [Citation.] These policy considerations are paramount, and courts recognize that guarding them by adhering to the privilege will 'result[] in some real injuries that go uncompensated.' [Citation.] This is 'simply part of the price that is paid' for free access to the courts. [Citation.] If the privilege applies, it cannot be set aside for any tort claim except malicious prosecution." (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 155 (*Dziubla*).)

Here, Brill's communications to Stroj and Fish were in the context of ongoing litigation in the *APB* case. Brill and Stroj were parties in that litigation. Fish was a defendant before Stroj removed him from the lawsuit, and Fish entered into a cooperation agreement with Stroj. The purpose of Brill's communications was to resolve the litigation in the *APB* case. And the communications had some connection to the *APB* case. The trial court correctly found: "Brill's communications relate to Stroj's threat to file the *APB* case if Brill did not settle with him, to Stroj's filing of the . . . first amended complaint [in the *APB* case], and to Stroj's breach of fiduciary duty allegations against Brill and [Levene] in the *ABP* case. Brill's communications bear a connection or logical relation to the *APB* case initiated by Stroj, to Stroj's allegations in the *APB* case, and to Stroj's communications to Brill regarding the *APB* case."

"Because the privilege 'attaches to any publication that has any reasonable relation to [a court] action and is made to achieve the objects of the litigation,'" we conclude the communications fall within the litigation privilege's "broad scope." (*Dziubla*, *supra*, 59 Cal.App.5th at p. 155.) The

21

litigation privilege bars Stroj's claims. He therefore cannot show a probability of prevailing on the merits on his claims.

## DISPOSITION

The order is affirmed. Respondents are entitled to costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


GOODING, J.